IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY RAY BROWN | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-10-CV-0253-K-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Anthony Ray Brown, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A Kaufman County grand jury indicted petitioner for capital murder in connection with the shooting death of Rodney Early during a robbery. At trial, petitioner was convicted of the lesser included offense of murder and sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal. *Brown v. State*, No. 05-04-00872-CR, 2005 WL 713664 (Tex. App.-- Dallas, Mar. 30, 2005, pet. ref'd). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex parte Brown*, WR-69,548-02 (Tex. Crim. App. Aug. 19, 2009). Petitioner then filed this action in federal district court.

II.

In multiple grounds for relief, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) did not interview three eyewitnesses who made conflicting and

inconsistent statements regarding the direction the gunman ran following the shooting; (2) failed to cross-examine two witnesses who testified for the state; (3) did not challenge an unduly suggestive identification procedure; (4) failed to object to a leading question asked by the prosecutor; (5) did not object to the exclusion of propensity evidence; (6) failed to object to the prosecutor's jury argument; (7) did not object to the verdict form; and (8) failed to object to a jury instruction on the operation and effect of the Texas parole laws.

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067.

Where, as here, a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *aff'd*, 2011 WL 1812764 (5th Cir. May 12, 2011). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Threadgill*, 2009 WL 2448499 at *5, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

On federal habeas review, the district court reviews "only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2383 (2009). When the Texas Court of Criminal Appeals denies post-conviction relief without written order on findings of the trial court, the federal

habeas court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Threadgill*, 2009 WL 2448499 at *5, *quoting Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004).

B.

Petitioner criticizes his attorney for failing to interview three witnesses who allegedly saw him run away following the shooting. One witness, Annie Massey testified that she ran to her front porch after hearing gunshots late in the afternoon of May 25, 2002. (*See* SF-III at 46-47). When Massey looked down the road, she saw petitioner, who she worked with in school athletics, running in a northerly direction before getting into a red and white car. (*Id.* at 47-48). Massey said that petitioner was wearing red hooded jacket, "like a sweatshirt." (*Id.* at 48). Another witness, Derrick Rendon, testified that he saw a man in a red or green overcoat, "like a sweat top," approach the victim. (*Id.* at 68). The man in the overcoat pointed a gun at the victim while the two argued, and fired two shots. (*Id.* at 69). Rendon heard the victim yell out, "I've been hit. Call 9-1-1." (*Id.* at 70). The third witness, Harmony Shannon, did not testify at trial. However, petitioner believes that Shannon told the police that the shooter ran west. (*See* Pet. Mem. Br. at 21). Neither Massey, Rendon, nor Shannon were interviewed by defense counsel. Had these witnesses been interviewed, petitioner contends that his attorney would have discovered that they gave conflicting and inconsistent accounts about the direction the gunman ran following the shooting.

Dennis Jones, one of the lawyers who represented petitioner at trial, countered these allegations in a sworn affidavit submitted to the state habeas court. In his affidavit, Jones stated:

> Defendant speaks about how Harmony Shannon's statement is inconsistent with other witnesses. I have examined my file, and I do not have a statement by Shannon. The only reference to Harmony

> Shannon is in an affidavit for arrest written by police wherein that affidavit indicates Shannon told police that she saw the shooter and that his clothing matched the description of the shooter given by other witnesses. There is nothing in any of my files that indicates Shannon also told the police the direction in which the shooter ran after the shots. This person did not exhibit information that would in any way help or assist the defendant in this case. In fact, her limited information (that was available to me) hurts the defendant's case. I am not going to probe into any area that hurts my case.
>
> Concerning Derrick Rendon: I had in my possession at trial the statement given by Rendon to the police. After listening to Rendon's testimony at trial, I did not find anything in which to cross examine other than the issues brought out by my cross examination. In his testimony, he did not testify about the direction the shooter ran; and the only reference in his statement about directions were that the shooter ran "back into the woods." That is inconsequential. The damaging part of Rendon's testimony was the description of the clothing of the shooter.
>
> Defendant indicates that Rendon testified the shooter ran west; but that is not accurate. The direction of the shooter is the police officer's assessment of the direction that the shooter ran. Neither Rendon's statement nor testimony indicate such. But in any event, whether the direction was west, south, northwest, etc, the direction was not the damaging part. The damaging part was the description of the clothing of the shooter; and that was what I attempted to bring out on cross examination.
>
> Nevertheless, after rereading the statement of facts, I do not see that any of the witnesses gave conflicting testimony of the direction in which the shooter ran.

*Ex parte Brown*, WR-69,548-02, Tr. at 660-61, ¶ 8. Relying on this affidavit, the state habeas court found that counsel was not ineffective for failing to call Shannon, and that the testimony of Rendon and Massey was not inconsistent with anything Shannon allegedly told the police. *Id.*, Tr. at 685-86, ¶¶ 18-21.

Petitioner has failed to offer any evidence, much less clear and convincing evidence, to rebut the finding that there was nothing inconsistent between the trial testimony of Rendon and Massey

and the statements given by witnesses to the police. With respect to the failure to call Shannon, "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* Here, there is no evidence that Shannon was available to testify at trial, would have done so, or that her testimony would have been favorable to the defense. This ground for relief should be overruled. *See Mumphrey v. Thaler*, No. 3-09-CV-1816-N, 2010 WL 1233541 at *4 (N.D. Tex. Feb. 19, 2010), *rec. adopted*, 2010 WL 1233545 (N.D. Tex. Mar. 29, 2010), *COA denied*, No. 10-10380 (5th Cir. Sept. 15, 2010), *cert. denied*, 131 S.Ct. 1497 (2011).

C.

Nor has petitioner shown that counsel was ineffective for failing to cross-examine two witnesses who testified for the state -- Pamela Early and Kenneth Taylor. Early, the victim's wife of seven years, identified a photograph of her deceased husband, testified that she kissed her husband goodbye before he left for work on the morning of the shooting, and said that she learned of his death later that day. (*See* SF-III at 10-12). Taylor testified that he accompanied petitioner that morning to confront "two Caucasian males." (*Id.* at 18). Petitioner told Taylor that the men took $200 from him, and he wanted to get his money back. (*Id.* at 18-19). On his way to confront the men, Taylor went to see petitioner's girlfriend to tell her that "she need[ed] to go over there and talk to Anthony because he might be getting ready to do something he ain't got no business." (*Id.* at 22.) Shortly thereafter, Taylor heard a gun shot. (*Id.* at 23). When Taylor saw petitioner a few minutes later,

petitioner admitted shooting a man in self-defense and taking the victim's phone. (*Id.* at 25-26). Taylor acknowledged on direct examination that he was "high" on the day of the shooting and had prior convictions for drug possession, forgery, and burglary. (*See id.* at 15).

Defense counsel elected not to cross-examine either Early or Taylor. According to petitioner, vigorous cross-examination of Early might have established that the victim owed money to a bookie, that another individual wanted to hurt her husband, or that her husband had double-crossed someone. (*See* Pet. Mem. Br. at 12). Petitioner also believes that counsel could have impeached Taylor's credibility on cross-examination by emphasizing that he was convicted felon who was under the influence of drugs on the day of the shooting. (*Id.* at 12-13). In response to these allegations, defense counsel explained that he had no information to rebut Early's testimony and feared that an aggressive cross-examination would be detrimental to the defense. *See Ex parte Brown*, WR-69,548-02, Tr. at 659, ¶ 2. With regard to Taylor, counsel stated:

> Since this witness was a fact witness for the state and had already given damaging testimony against the applicant, my strategy was to minimize any damage already done. Further questions by me would/could only exacerbate his already damaging testimony. Also, I did not have any questions that would diminish his testimony. There were not any areas of cross examination available to me or known to me that could/would lessen his credibility.

*Id.*, Tr. at 659, ¶ 3. The state habeas court found that counsel's decision not to cross-examine Early out of fear of alienating the jury or coming across as too aggressive was sound trial strategy, *see id.*, Tr. at 683, ¶ 6, and that there was nothing to suggest that such cross-examination would have revealed a motive for another individual to harm the victim. *Id.*, Tr. at 682-83, ¶ 5. The court also found that petitioner failed to identify any areas where his attorney might have cross-examined Taylor effectively. *Id.*, Tr. at 683, ¶ 7. Because Taylor's prior convictions and drug use were already

before the jury, the state court determined that counsel was not ineffective for failing to present additional evidence in this regard. *See id.*, Tr. at 683 at ¶¶ 8-9 (citations omitted).

Although petitioner speculates that counsel could have elicited favorable evidence from Early and impeached Taylor's credibility through cross-examination, such speculation does not merit habeas relief. *See Mendoza v. Dretke*, No. 3-05-CV-0042-M, 2005 WL 1124513 at *4 (N.D. Tex. May 11, 2005), *rec. adopted*, 2005 WL 1639330 (N.D. Tex. Jul. 13, 2005) (citing cases) (habeas petitioner must show how alleged errors and omissions were constitutionally deficient). Instead of risking unfavorable testimony on cross-examination, defense counsel wisely chose to emphasize the weaknesses in the state's case during closing argument. Among those weaknesses were conflicting bystander testimony about the clothes worn by the gunman, the questionable credibility of Kenneth Taylor, defects in the police investigation, and the failure to prove the essential elements of capital murder. (*See* SF-III at 185-97). Petitioner has failed to overcome the strong presumption that counsel's decision not to cross-examine Early and Taylor was "sound trial strategy." *See Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir.), *cert. denied*, 120 S.Ct. 369 (1999) (an informed decision based on trial strategy cannot be the basis for an ineffective assistance of counsel claim unless the decision was "so ill chosen that it permeates the entire trial with obvious unfairness").

D.

Next, petitioner criticizes his attorney for failing to challenge a suggestive identification procedure. At issue is the testimony of Derrick Rendon, who told police immediately following the murder that the gunman wore a red sweatshirt, but testified at trial that he "didn't get a good look" at the color of the shirt. (*See* SF-III at 68-69). On cross-examination, Rendon said that he observed the gunman from a distance of about fifty yards. (*Id.* at 71). When asked by defense counsel if he was "fairly clear" that the gunman wore a red hooded sweatshirt, Rendon said, "No, sir." (*Id.* at 72).

Rendon also said that the police "might have mentioned, you know, what color it might have been." (*Id.*).

Significantly, Rendon did not identify petitioner as the gunman either at a pretrial line-up or at trial. As a result, there was no basis for counsel to object to a suggestive identification procedure. Rather than raise this groundless objection, counsel tried to discredit Rendon by pointing out inconsistencies in his statement to the police and trial testimony regarding the color of the sweatshirt. *See Ex parte Brown*, WR-69,548-02, Tr. at 660, ¶ 5. The state habeas court found that there was no suggestive identification, and that counsel's decision to elicit from Rendon that the police suggested the color of the shirt was sound trial strategy. *Id.*, Tr. at 684, ¶¶ 13-14. Petitioner offers nothing to rebut this finding.

E.

Petitioner also faults his attorney for failing to make certain objections at trial. One claim involves the following questions asked by the prosecutor during her direct examination of Kenneth Taylor:

> Q. Did [petitioner] tell you that he saw Rodney Early?
>
> A. Who is Rodney?
>
> Q. The person that he killed. Or the person that was killed. Did he tell you something?
>
> A. He didn't say nothing about he saw no Rodney.

(SF-III at 24). Although petitioner characterizes these questions as "leading," the state habeas court found that the questions were permissible and that any objection would have been futile. *Ex parte Brown*, WR-69,548-02, Tr. at 683-84, ¶¶ 10-12. This determination is neither contrary to federal law nor unreasonable. The prosecutor merely identified the victim by name. Her questions did not

suggest the answer or put words into the mouth of the witness to be "echoed back" in reply -- the hallmarks of a leading question. *See Smith v. Thaler*, No. H-09-2177, 2011 WL 1258562 at *19 (S.D. Tex. Mar. 31, 2011), *citing Mega Child Care, Inc. v. Tex. Dep't of Protective & Reg. Servs.*, 29 S.W.3d 303, 307 (Tex.App.--Houston [14th Dist.] 2000, no pet.).

Similarly, counsel was not ineffective for failing to object when the trial court excluded evidence that petitioner never hit his girlfriend, Nakia McDonald. At trial, McDonald testified that she and petitioner argued on May 25, 2002, the day of the shooting, but petitioner did not hit or push her. (*See* SF-III at 161-63). When defense counsel asked McDonald if petitioner ever hit her, McDonald answered, "Never, ever." (*Id.* at 163). The prosecutor objected to the last question on relevance grounds, and the trial court sustained the objection. (*Id.*). However, the jury was never instructed to disregard McDonald's answer that petitioner never hit her. Because McDonald's testimony was before the jury, both the state appeals court and the state habeas court found that petitioner was not harmed by the trial court's ruling. *See Brown*, 2005 WL 713664 at *2; *Ex parte Brown*, WR-69,548-02, Tr. at 684-85, ¶ 15. Even if counsel should have objected to that ruling, petitioner has not established prejudice under *Strickland*.

Petitioner further contends that his attorney should have objected to two aspects of the prosecutor's closing argument -- that the color of the sweatshirt worn by the gunman is not an element of capital murder, and that Julia Newsome gave a signed statement to the police. The first statement is legally correct -- the color of the gunman's shirt is not an element of capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2).[1] A careful review of the record reveals that the prosecutor never told the jury that Newsome gave a *signed* statement to the police. She argued only that

---

[1] Under Texas law, a person commits the offense of capital murder if "the person intentionally commits [ ] murder in the course of committing or attempting to commit . . . robbery[.]" TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994).

Newsome said in her statement that the suspect wore a red sweatshirt. (*See* SF-III at 199). As noted by the state habeas court, there was no basis for counsel to object to either of these jury arguments. *Ex parte Brown*, WR-69,548-02, Tr. at 685-86, ¶¶ 16, 22.

Finally, petitioner faults his attorney for failing to object to the verdict form and a jury instruction on the operation and effect of the Texas parole laws. There was nothing improper or prejudicial about the verdict form, which petitioner believes infringed upon the presumption of innocence by listing the option of "guilty" before "not guilty." Indeed, the jury convicted petitioner of the lesser included offense of murder, which was the second option on the verdict form. (*See* St. App. Tr. at 140). The jury instruction properly summarized the Texas parole law, and was statutorily required in this case. *See Martin v. Thaler*, No. 4-10-CV-050-A, 2010 WL 2697155 at *8 (N.D. Tex. Jul. 7, 2010), *citing* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon 2001).[2] Counsel was

---

[2] In accordance with Texas law, the trial court instructed the jury that:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

not ineffective for failing to make these frivolous objections. *See Carter v. Quarterman*, 3-07-CV-0388-K, 2008 WL 361004 at *6 (N.D. Tex. Feb. 6, 2008), *COA denied*, No. 08-10172 (5th Cir. Nov. 25, 2008).

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 23, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a).